**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

LISA HOUCK and
JOSEPH RONAN,                              Civil No. 12-1010 (NLH/JS)

           Plaintiffs,

                                           **OPINION**

      v.

ARTHUR J. FERRARI, PREVIOUSLY
J. DOE #1, WHO IDENTIFIED
HIMSELF AS "POLICE", J. DOE
#2, et al. (both in their
personal and official
capacities if they are police
officers), AND BRIEF OF
THOMAS GABLE, PREVIOUSLY
J.DOE #3, PLAINTIFF, HOUCK,
TO J. DOES #4 TO #10, MARINA
DISTRICTBORGATA AND GABLE'S
DEVELOPMENT COMPANY, LLC,
d/b/a MARINA MOTION FOR
SUMMARY DISTRICT DEVELOPMENT
COMPANY, LLC d/b/a JUDGMENT
BORGATA HOTEL, CASINO & SPA,
PREVIOUSLY ABC BUSINESS
ENTITY #1, ABC BUSINESS
ENTITIES #2 TO #10, THE STATE
OF NEW JERSEY, (only with
respect to responsibility for
any sexual discrimination or
harassment perpetrated by J.
Does #1 & #2), MUNICIPALITY
#1(if the officers are
municipal police) AND COLONEL
RICK FUENTES, SUPERINTENDENT
OF THE NEW JSERSEY STATE
POLICE (solely in his
official capacity for
declaratory relief if J. does
#1 or #2 were State Police
Officers), jointly, severally
and in the alternative,
           Defendants.

**APPEARANCES**

THOMAS B. DUFFY
739 BAYVIEW DR
ABSECON, NJ 08201-1208
 On behalf of plaintiffs

IONE KRISTY CURVA
VINCENT J. RIZZO, JR.
STATE OF NEW JERSEY
OFFICE OF THE ATTORNEY GENERAL
25 MARKET STREET
P.O. BOX 112
TRENTON, NJ 08625
 On behalf of state defendants

AMY ELIZABETH RUDLEY
JEFFREY RYAN LINDSAY
COOPER, LEVENSON, APRIL, NIEDELMAN & WAGENHEIM, PA
1125 ATLANTIC AVENUE
THIRD FLOOR
ATLANTIC CITY, NJ 08401
 On behalf of Borgata defendants

**HILLMAN, District Judge**

 Presently before the Court are the motions of defendants for summary judgment on plaintiffs' claims concerning their detention and questioning at the Borgata Hotel, Casino & Spa. For the reasons expressed below, defendants' motions will be granted.

**BACKGROUND**

 On January 25, 2009, plaintiffs Lisa Houck and Joseph Ronan, along with Houck's parents, were on the casino floor at the Borgata playing the slot machines. A Borgata security guard, defendant Thomas Gable, approached Houck and escorted her

2

to a small cubicle.  Gable asked Houck for identification, and
Houck showed Gable her state-issued New Jersey driver's license
which displayed her legal name.  The day before, Houck was in
possession of an identification card in the name of "Pam
Michaels" which contained Houck's picture, height, and eye
color, which she used to obtain a Borgata player's card in the
name of "Pam Michaels."  She had used the "Pam Michaels" Borgata
player's card in a slot machine sometime between January 24th and
the 25th.

At a different slot machine in another part of the casino,
a security guard approached Ronan and escorted him to a private
room.  When asked for his identification, Ronan provided an ID
with his name on it.  Just like Houck, the day before Ronan had
used an ID with the name "Seth Michaels" to obtain a Borgata
player's card in the name of "Seth Michaels," and he placed it
in a slot machine at some point between January 24th and the
25th.

During their detention, which remained separate from one
another, defendant Arthur Ferrari of the New Jersey state police
asked plaintiffs for identification and for their social
security numbers.  Plaintiffs were told that they needed to
provide their social security numbers to properly identify them
because they had used fake IDs.  Houck provided her passport to
Ferrari, but she refused to provide her social security number.

She also asked repeatedly to speak to a lawyer.  Ferrari told
Houck that if she did not give him her social security number,
she could be placed under arrest.  Houck eventually provided her
social security number.  In a different room, Ferrari asked for
Ronan's social security number, which he provided.  Ronan also
requested an attorney.  The Borgata obtained plaintiffs'
signatures on eviction paperwork, and Gable escorted them out of
the Borgata.[1]

Plaintiffs claim that defendants terrorized them and
improperly extorted their social security numbers from them, and
defendants did so by violating numerous federal and state laws.
Plaintiffs' complaint contains the following claims: false
imprisonment (Count I), assault (Count II), invasion of privacy
(Count III), false light (Count IV), harassment and intimidation
(Count V), conversion or unjust enrichment (Count VI), consumer
fraud (Count VII), negligence (Count VIII), intentional
infliction of emotional distress (Count IX), negligent
infliction of emotional distress (Count X), sexual, marital
status or affectional discrimination under the New Jersey Law
Against Discrimination (Count XI), numerous claims pursuant to
42 U.S.C. § 1983, including violations of the First Amendment,
Fourth Amendment, Eighth Amendment, Fourteenth Amendment, and

---

[1] Plaintiffs claim that they were forced to sign a blank piece of
paper.  This claim is addressed below.

4

Equal Protection Clause to the U.S. Constitution (Count XII),
numerous claims pursuant to the New Jersey Civil Rights Act
("NJCRA") (Count XIII), violation of the New Jersey ID Privacy
Act, N.J. Stat. Ann. 56:8-161 to -166 (Count XIV), violation of
the Fair Credit Reporting Acts (Count XV), and injunctive relief
via § 1983 (Count XVI).

Defendants have moved for summary judgment on all of these
claims.  Defendants contend that the reason for plaintiffs'
questioning and eviction from the Borgata was plaintiffs' use of
false names on player's cards, their suspected participation in
a "hole card" team at the blackjack table, and their suspected
"structuring" when they previously sought to cash out winnings.

On a prior visit to the Borgata approximately one week
earlier on January 17, 2009, Houck and Ronan went to two
different cashiers and attempted to cash out $16,000 in
winnings.  However, the transactions could not be completed
because Ronan did not show his ID.[2]  Ronan retrieved his chips
and left the casino.  The Borgata was alerted to plaintiffs at
this time because it is a violation of federal and New Jersey
state law to cash out more than $10,000 by one person without
showing proof of identity, including a social security number.

---

[2] Plaintiffs contest that they attempted to cash out $16,000, and
although they cannot recall the exact amount, they contend it
was less than $10,000.  This issue is discussed below.

Moreover, the Borgata is required to monitor and report suspicious activity.

When plaintiffs came back to the Borgata the following week, defendants contend that they were escorted to private areas to identify themselves due to the suspicious attempt to cash out a large amount of chips without identification, and their use of player's cards in false names.  They were also questioned about their play at blackjack tables, including participation in "hole carding," which is where the blackjack dealer fails to fully protect the view of his face down card, and a blackjack player uses that knowledge to his advantage in playing the game.  Although Houck denies any involvement in hole carding, Ronan admits that he passed signals and instructions to her while playing blackjack.

The Borgata is required to inform the New Jersey State Police regarding alleged suspicious activity, and that is how defendant Ferrari became involved in January 25, 2009 questioning of plaintiffs.  Ferrari contends that he asked for plaintiffs' social security numbers because it was a routine practice used to identify casino patrons suspected of using false identification.  After plaintiffs were evicted from the premises by Borgata security personnel, the state police conducted a review of video security footage.  Because the video was inconclusive, a criminal investigation of the plaintiffs was

closed without any charges.

## DISCUSSION

### A.    Subject matter jurisdiction

When defendants removed plaintiffs' complaint to this Court, the complaint contained both federal and state claims. As a result, this Court had jurisdiction over plaintiffs' federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over plaintiffs' state law claims under 28 U.S.C. § 1367.  Even though defendants are entitled to summary judgment on plaintiffs' sole remaining federal claim, the Court will continue exercising its supplemental jurisdiction to resolve the remaining state law claims.  See Growth Horizons, Inc. v. Delaware County, Pa, 983 F.2d 1277, 1284-85 (3d Cir. 1993) (stating that as the statute makes clear, the decision to exercise supplemental jurisdiction over remaining state law claims pursuant to 28 U.S.C. § 1367 is committed to the discretion of the district court); see also The Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758 (2011), amended 28 U.S.C. § 1441(c) (requiring that a district court remand unrelated state law matters that were removed along with federal claims, but where plaintiffs' state law claims form part of the same case or controversy as their remaining federal claim, remand of the state claims would not be required).

**B.   Summary judgment standard**

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has

met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

### C.  Analysis

The crux of plaintiffs' complaint regarding the January 25, 2009 incident at the Borgata is that they were aggressively removed from the casino floor, detained and interrogated separately, and intimidated into revealing their social security numbers, all when they did nothing wrong.  Plaintiffs vehemently reject the notion that using alternative names is illegal, or that hole carding is a crime, and that defendants' treatment of them constitutes false imprisonment, assault, invasion of privacy, false light invasion of privacy, conversion and unjust

enrichment,[3] consumer fraud, negligence, and emotional distress,[4] and, in the case of state trooper Ferrari, a violation of plaintiffs' Fourth Amendment right to be free from unlawful seizure.   Each claims will be addressed in turn.

### 1.   False imprisonment

False imprisonment is "the constraint of the person without legal justification."  The tort of false imprisonment has two elements: (1) "an arrest or detention of the person against his or her will" and (2) "lack of proper legal authority or legal justification."  <u>Leang v. Jersey City Bd. of Educ.</u>, 969 A.2d 1097, 1117 (N.J. 2009) (citation and quotations omitted).

Defendants argue that their legal justification for detaining plaintiffs was pursuant to N.J.S.A. 5:12-121, which provides:

> a. Any licensee or its officers, employees or agents may question any individual in the casino or simulcasting facility or elsewhere in the establishment who is reasonably suspected of violating

---

[3] Plaintiffs' conversion and unjust enrichment claim concerns the $800 electronic money voucher that she claims was left in her slot machine when she was escorted off the casino floor.  The details of this claim are discussed below.

[4] Plaintiffs do not appear to abandon their argument that the Borgata and Gable can be considered state actors, and, presumably, can be held to violate the Fourth Amendment.  The Court finds this position to be unsupportable.  <u>See</u> <u>Leshko v. Servis</u>, 423 F.3d 337, 339 (3d Cir. 2005).  Additionally, even if the Borgata defendants were held to be state actors, plaintiffs' Fourth Amendment claim is unsupportable, as explained below.

any of the provisions of sections 113 through 116 of
P.L.1977, c. 110 (C.5:12-113 through 116) . . . .  No
licensee or its officers, employees or agents shall be
criminally or civilly liable by reason of any such
questioning.

b. Any licensee or its officers, employees or agents
who shall have probable cause for believing there has
been a violation of sections 113 through 116 of
P.L.1977, c. 110 (C.5:12-113 through 116) . . . in the
casino or simulcasting facility by any person may
refuse to permit such person to continue gaming or
wagering or may take such person into custody and
detain him in the establishment in a reasonable manner
for a reasonable length of time, for the purpose of
notifying law enforcement authorities.  Such refusal
or taking into custody and detention shall not render
such licensee or its officers, employees or agents
criminally or civilly liable for false arrest, false
imprisonment, slander or unlawful detention, unless
such refusal or such taking into custody or detention
is unreasonable under all of the circumstances.

N.J.S.A. 5:12-121.

Plaintiffs argue that this statute does not afford immunity

to the Borgata and Gable on their false imprisonment claims

because in order for the immunity provision to apply, plaintiffs

must have been suspected of violating sections 113 through 116,

and none of those provisions applies to them.[5]  Section 113

_____

[5] Plaintiffs also argue that defendants cannot avail themselves
of this immunity provision because they failed to list it as one
of their affirmative defenses in their answer.  Even though
Federal Civil Procedure Rule 8(c) lists numerous affirmative
defenses that are waived if not pleaded in an answer, failure to
raise an affirmative defense by responsive pleading or
appropriate motion does not always result in waiver.  It has
been held that a defendant does not waive an affirmative defense
if he raised the issue at a pragmatically sufficient time, and
the plaintiff was not prejudiced in its ability to respond.
Charpentier v. Godsil, 937 F.2d 859, 863-64 (3d Cir. 1993)

11

provides, "A person is guilty of swindling and cheating if the person purposely or knowingly by any trick or sleight of hand performance or by a fraud or fraudulent scheme, cards, dice or device, for himself or herself or for another, wins or attempts to win money or property or a representative of either or reduces a losing wager or attempts to reduce a losing wager in connection to casino gaming." N.J.S.A. 5:12-113(a). Section 114 concerns the use of bogus chips or gaming billets, marked cards, dice, cheating devices, unlawful coins. N.J.S.A. 5:12-114. Section 115 makes it unlawful to:

> (1) Knowingly to conduct, carry on, operate, deal or allow to be conducted, carried on, operated or dealt any cheating or thieving game or device; or
> (2) Knowingly to deal, conduct, carry on, operate or expose for play any game or games played with cards, dice or any mechanical device, or any combination of games or devices, which have in any manner been marked or tampered with, or placed in a condition, or operated in a manner, the result of which tends to deceive the public or tends to alter the normal random selection of characteristics or the normal chance of the game which could determine or alter the result of the game.

N.J.S.A. 5:12-115(a). And, Section 116 concerns the unlawful possession of device, equipment or other material illegally manufactured, distributed, sold or serviced. N.J.S.A. 5:12-116.

---

(citations omitted). Moreover, statutory immunity is not listed as a waivable defense in Rule 8(c). Consequently, plaintiffs' argument is unavailing.

Plaintiffs argue that these provisions do not apply to them because hole carding does not fall under any of these sections.[6] Plaintiffs contend that if the dealer makes his hole card visible to the other players, it is fair for other players to use that to their advantage. To support this contention, plaintiffs cite to international poker tour rules and books on gambling etiquette.

Accepting as true that it is not considered unfair or bad etiquette to use a competitor's inadvertently exposed cards to one's advantage in a card game between private players, this same rationale cannot be imputed to a highly regulated casino blackjack game where state statutes prohibit such gamesmanship. Although hole carding could fall into several of the categories listed, it can certainly constitute a "scheme" in Section 113 and an alteration of "the normal random selection of characteristics or the normal chance of the game" in Section 115. Moreover, as pointed out by defendants, the game of blackjack depends entirely upon the concealment of the hole card. See, e.g., N.J.A.C. 19:47-2.6 ("[A] casino licensee may permit a blackjack dealer to deal his or her hole card face

_____

[6] Plaintiffs also argue that having an identification card with a false name is not illegal, and using that ID with an alias to obtain a player's card does not constitute any violations of Sections 113-116. In light of our determination that reasonable grounds existed to detain plaintiffs on other grounds, the Court need not address that argument.

downward after a second card and before additional cards are
dealt to the players provided that said dealer not look at the
face of his or her hole card until after all other cards
requested by the players pursuant to those regulations are dealt
to them."). If a dealer makes an error and does not properly
conceal the hole card, and a player gets a peek at the hole card
and uses that to her advantage, plaintiffs suggest that the loss
to the casino is fair due to its own mistake. Plaintiffs,
however, do not address the consequences to the other players at
the blackjack table who are similarly affected to their
detriment due to no fault of their own.

Thus, the Court cannot credit plaintiffs' argument to the
inapplicability of the immunity provision of N.J.S.A. 5:12-121.
Because it is applicable, it must be determined whether
defendants had probable cause to detain plaintiffs. Defendants
argue that in addition to Borgata's suspicion that plaintiffs
were hole carding, the chip cashing incident and plaintiffs'
using the players cards in false names also provided the basis
for defendants' questioning of plaintiffs. The Court finds that
this is sufficient probable cause to afford the Borgata
defendants immunity under N.J.S.A. 5:12-121.[7]

---

[7] Even if the Borgata defendants were not immune under N.J.S.A.
5:12-121, the finding of probable cause to detain plaintiffs
defeats the second element of a claim for false imprisonment.

To explain the finding that defendants had probable cause to detain and question plaintiffs, a New Jersey appellate court decision is on point.  In Pantalone v. Bally's Park Place Casino Hotel, 549 A.2d 55, 57-58 (N.J. Super. Ct. App. 1988), the appellate division stated,

> [The] courts that have addressed the concept [of probable cause in N.J.S.A. 5:12-121] in the context of similar legislation involving shoplifting have applied principles derived from criminal law.  The decision as to whether probable cause exists in a given case is essentially for the trial judge.  In making that decision the judge "strikes a balance between the interests of an individual in being free from police interference and the interests of society in effective law enforcement."  The individual's interest originates in the Fourth Amendment right to be free from "unreasonable" searches and seizures.  The balance is a delicate one to be performed by the judicial officer who may not abrogate that responsibility to a third person.  Our Supreme Court has stated that probable cause "is something less than proof needed to convict and something more than a raw, unsupported suspicion. It is a suspicion (or belief) of guilt that is 'well grounded.' The emphasis is upon a practical, realistic view of law enforcement, in recognition of the primacy of the individual's right to be safe from attack."
>
> In order to determine the reasonableness of defendant's decision to detain plaintiff, the court must weigh all the pertinent factors in the case. These include the severity or lack of severity of the offense, the factual basis for the suspicion upon which the defendant acted, and the nature and extent of the restraint on plaintiff's freedom of movement. The judgment cannot simply rest upon a finding that the defendant acted in good faith. The justification for defendant's conduct must be grounded on facts within the knowledge of the person responsible for the arrest, which facts in the judgment of the court make defendant's conduct objectively reasonable. The question is not whether the person responsible for the arrest thought the facts to constitute probable cause,

> but whether the court thinks that such facts
> constitute probable cause.

Pantalone, 549 A.2d at 57-58 (internal citations omitted).

Here, plaintiffs were captured on closed circuit video attempting to cash in a large amount of chips, which Ronan admits was at least $8,000. When asked for ID, however, he declined, retrieved his chips, and left the casino. In addition to this, it appeared that Houck and Ronan were attempting to "structure" the cashing-in of the chips so that ID would not be required, a potential violation of federal criminal law. When plaintiffs returned to the Borgata a week later, they used false IDs to obtain player's cards with false names, and used these cards in the slot machines. Moreover, they were both suspected of being a part of a hole card team, and although Houck denied involvement in hole carding, Ronan admitted to providing Houck instructions and signaling to her.

These factors support the "well-grounded suspicion" to detain and question plaintiffs as to their identities and conduct within the casino. Even though the Court accepts plaintiffs' claims that they felt violated and harassed by being removed from the playing floor, questioned in separate rooms, and ultimately evicted from the casino, the Borgata had the requisite probable cause to do so. Because the Borgata defendants constrained plaintiffs with legal justification,

plaintiffs' false imprisonment claim fails as a matter of law.

### 2. Assault

Plaintiffs claim that they were assaulted by Gable and the other Borgata security personnel involved in the January 25, 2009 incident.  Even though neither plaintiff was touched more than a hand on their shoulder, plaintiffs contend that during their interrogation they feared they would be struck by defendants.

A person is subject to liability for the common law tort of assault if: "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension." Leang v. Jersey City Bd. of Educ., 969 A.2d 1097, 1117 (N.J. 2009) (citation omitted) (also explaining that the companion tort of battery rests upon a nonconsensual touching).

The Court accepts as true plaintiffs' contention that they felt fearful of the circumstances surrounding their removal from the casino floor and questioning in private rooms, and that Houck specifically felt intimated by the male security personnel.  There is no evidence in the record, however, from which a reasonable jury could find that the Borgata defendants acted to cause harmful physical contact to plaintiffs or acted in such a way as to threaten such harm imminently.  Plaintiffs'

17

allegations, without the support of specific facts and affirmative evidence, cause plaintiffs' claim for assault to fail.

### 3. Invasion of privacy

Plaintiffs have asserted two invasion of privacy claims regarding the forced revelation of their social security numbers. As explained in plaintiffs' opposition briefs, there are four categories of invasion of privacy claims:

> (1) intrusion (e.g., intrusion on plaintiff's physical solitude or seclusion, as by invading his or her home, illegally searching, eavesdropping, or prying into personal affairs); (2) public disclosure of private facts (e.g., making public private information about plaintiff); (3) placing plaintiff in a false light in the public eye (which need not be defamatory, but must be something that would be objectionable to the ordinary reasonable person); and (4) appropriation, for the defendant's benefit, of the plaintiff's name or likeness.

Swan v. Boardwalk Regency Corp., 969 A.2d 1145, 1152 (N.J. Super. Ct. App. Div. 2009) (citing W. Page Keeton, et al, Prosser and Keeton on the Law of Torts § 117 (5th ed. 1984)). Plaintiffs' briefs also clarify that the two types of invasion of privacy violations plaintiffs claim were perpetrated by defendants in extorting their social security numbers are intrusion and appropriation.[8]

---

[8] In Count IV of their complaint, plaintiffs assert a claim for false light invasion of privacy. Plaintiffs' brief states that the false light claim survives summary judgment because they

The record shows that the Borgata staff did not demand plaintiffs' social security numbers.  Instead it was New Jersey State Trooper Ferrari who requested their social security numbers so that their identities could be confirmed and a state police investigation could be pursued.  There is no evidence in the record that Gable or any other Borgata employee asked for their social security numbers or recorded those numbers for future use.  Accordingly, plaintiffs' invasion of privacy claim fails.[9]

### 4. Conversion and Unjust Enrichment

Plaintiff Houck claims that when she was removed from the casino floor, she was forced to leave an $800 money ticket voucher in the slot machine.  Because she was evicted from the Borgata without it being returned to her, the Borgata is liable for conversion and unjust enrichment.[10]

---

were forced to sign blank documents, which now appear to be eviction documents.  This allegation does not support a false light claim because it concerns how the public perceives plaintiffs.  Thus, Count IV is without merit.

[9] Even though plaintiffs had asserted this claim against defendant Ferrari, they concede that they did not comply with the administrative procedures of the New Jersey Tort Claims Act, which must be followed prior to bringing tort claims against public entities and employees operating in their official capacities.  See N.J.S.A. 59:8-8.

[10] Houck's claim for unjust enrichment is without merit.  See VRG Corp. v. GKN Realty Corp., 641 A.2d 519, 526 (N.J. 1994) ("The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it

Houck states that when she was escorted to leave her slot
machine, she asked her mother to watch the two slot machines she
was playing.  Her mother testified that one machine would not
cash out, and the other provided a voucher, but she cannot
remember the value of the voucher, and she cannot remember how
much money was left on the machine that would not cash out.  She
also testified that she did not seek any assistance from a
Borgata employee to help with the slot machine that would not
cash out.

It is plaintiff's burden to prove her claims, and she has
not provided any evidence, such a transactional report from the
slot machine or testimony from a Borgata employee, to establish
that (1) she was actually playing with a voucher worth $800, (2)
the voucher was validly hers, and (3) the Borgata retained all
of it.  See Bondi v. Citigroup, Inc., 32 A.3d 1158, 1190 (N.J.
Super. App. Div. 2011) (explaining that the common law tort of
conversion is the wrongful exercise of dominion and control over
property owned by another in a manner inconsistent with the
owner's rights, and two essential elements are that the money
converted by a tortfeasor must have belonged to the injured
party, and that the funds must be identifiable).  Plaintiff has

_____

performed or conferred a benefit on defendant and that the
failure of remuneration enriched defendant beyond its
contractual rights.").

failed to prove any of these things, and, accordingly, defendants are entitled to judgment on her conversion and unjust enrichment claims.

### 5.  Consumer Fraud

Plaintiffs claim that the Borgata defendants' actions constitute consumer fraud under New Jersey's Consumer Fraud Act, N.J.S.A. 56:8-1 et seq.  To prevail on a CFA claim, a plaintiff must establish three elements: "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss."  Zaman v. Felton, --- A.3d ---, 2014 WL 4411558, 12 (N.J. Sept. 9, 2014).  The NJCFA defines an "unlawful practice" to include: "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, . . . whether or not any person has in fact been misled, deceived or damaged thereby."  N.J.S.A. 56:8-2.

Plaintiffs contend that their false imprisonment, assault, and conversion claims constitute the "unlawful conduct" element of their NJCFA claim.  Because those predicate "unlawful" acts fail as a matter of law, so does plaintiffs' NJCFA claim.


### 6.  Negligence

Plaintiffs assert a broad claim of negligence encompassing all of their allegations that the Borgata defendants acted

21

negligently.  To establish a prima facie case of negligence, a plaintiff must establish all of the following elements: (1) duty of care, (2) breach of that duty, (3) proximate cause, and (4) damages suffered by the plaintiff.  Filipowicz v. Diletto, 796 A.2d 296, 299 (N.J. Super. App. Div. 2002) (citation omitted). The duty owed to a plaintiff is determined by the circumstance that brought him or her to the property, and an invitee, in the legal sense, is "one who is on the premises to confer some benefits upon the invitor other than purely social." Filipowicz, 796 A.2d at 299 (citations omitted).

Plaintiffs rely upon their claims supporting their false imprisonment, invasion of privacy, and other counts to support their contention that the Borgata defendants breached their duty of care to plaintiffs.  These bases to prove that defendants breached the duty of care to plaintiffs fail for the same reasons as their other claims.

### 7.  Emotional Distress

Plaintiffs contend that their experience at the Borgata caused them emotional distress.  Plaintiffs' emotional distress claims fail.

"Whether it is alleged that the defendant acted intentionally, recklessly or negligently," the New Jersey Supreme Court "has said that recovery lies only if the plaintiff can prove the emotional distress produced by the defendant's

tortious conduct was 'severe,' or 'genuine and substantial.'"
Innes v. Marzano-Lesnevich, 87 A.3d 775, 797 (N.J. Super. Ct.
App. Div. 2014) (citations omitted).  To recover "emotional
distress damages under the rubric of negligent or intentional
infliction of emotional distress," a plaintiff is required to
make a "heightened showing of physical or psychological
sequelae."  Innes, 87 A.3d at 799 (citations omitted).

In addition to plaintiffs' inability to prove their
negligence or other claims, plaintiffs have not provided any
proof regarding their severe emotional distress.  Accordingly,
defendants are entitled to summary judgment on plaintiffs'
emotional distress claims.

### 8.   Fourth Amendment violation claim against Ferrari

Plaintiffs claim that their detention, interrogation, and
extortion of their social security numbers by New Jersey state
trooper Ferrari constitutes a violation of their Fourth
Amendment rights.

The Fourth Amendment of the United States Constitution
prohibits "unreasonable searches and seizures."  U.S. Const.
amend. IV.  To establish an unlawful seizure under the Fourth
Amendment, a plaintiff must show that the defendant's actions:
(1) constituted a "seizure" within the meaning of the Fourth
Amendment, and (2) that seizure was "unreasonable" in light of
the surrounding circumstances.  Browner v. County of Inyo, 489

U.S. 593, 595-600 (1989).  A seizure occurs "when [a police officer], by means of physical force or show of authority, has in some way restrained the liberty of a citizen." Terry v. Ohio, 392 U.S. 1, 19-20 n. 16 (1968).  The "show of authority" test "is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." California v. Hodari D., 499 U.S. 621, 628 (1991).  The Supreme Court has stated that the warrantless seizure of a person for a brief investigatory detention is reasonable absent a warrant, provided the officer had "a reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000) (citation omitted).  "Reasonable suspicion is an objective standard requiring "particularized justification." United States v. Crandell, 554 F.3d 79, 84 (3d Cir. 2009).

In considering plaintiffs' false imprisonment claims against the Borgata defendants, the Court found that probable cause existed to remove plaintiffs from the casino floor and question them about their activities.  With regard to Ferrari's involvement in their questioning, plaintiffs contend that he threatened them with arrest if they did not provide him with

their social security numbers.[11]

As a primary matter, just as probable cause existed for the Borgata defendants to detain and question plaintiffs, the same finding can be applied to Ferrari's detention of plaintiffs. This is especially true because "reasonable suspicion" is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence. Illinois, 528 U.S. at 123.

With regard to Ferrari's demands for plaintiffs' social security numbers, Ferrari states that it is normal practice for state police to ask for a suspect's social security number when there is evidence of false identifications. Ferrari's request was not without legitimate purpose, as Ferrari had opened a state police investigation for "Cheating at Table Games and Financial Facilitation of Criminal Activity," pursuant to N.J.S.A. 5:12-113A and N.J.S.A. 2C:21-25-B. The Court does not

---

[11] To the extent that plaintiffs contend that Ferrari is liable under Section 7 of the Federal Privacy Act, that claim fails as a matter of law. See Ingerman v. Delaware River Port Authority, 630 F. Supp. 2d 426, 446 (D.N.J. 2009) (explaining that Section 7 of the Privacy Act). Any claim based on plaintiffs' alleged violation of their Miranda rights also fails as a matter of law. See Renda v. King, 347 F.3d 550, 557 (3d Cir. 2003) (citation omitted) (explaining that "a plaintiff may not base a § 1983 claim on the mere fact that the police questioned the plaintiff in custody without providing Miranda warnings where there is no claim that the statements obtained in violation of Miranda were used against the plaintiff").

find it objectively unreasonable for a police officer to confirm a criminal suspect's identity where the suspect has admitted to using identification with false names.[12]  Accordingly, Ferrari is entitled to summary judgment on plaintiffs' Fourth Amendment violation claim.

**CONCLUSION**

For the reasons expressed above, defendants are entitled to summary judgment on all of plaintiffs' claims against them.  An appropriate Order will be entered.


Date: October 22, 2014                    s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.

---

[12] Ferrari explains that his field notes with plaintiffs' social security numbers were destroyed, and they were only used to prepare the investigation report, to which only the state police have access.  Moreover, "[r]equiring disclosure of a social security number does not so threaten the sanctity of individual privacy as to require constitutional protection." McCauley v. Computer Aid, Inc., 242 Fed. Appx. 810, 813 (3d Cir. 2007), cited in Ingerman v. Delaware River Port Authority, 630 F. Supp. 2d 426, 446 (D.N.J. 2009).